# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD V. ROOD,

    Plaintiff,

  vs.

GARY SWARTHOUT, et al.,

    Defendant.

                          /

No. 2:13-cv-0478-CMK-P

ORDER

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1), motion for ruling (Doc. 25) and motion for service (Doc. 26).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the defendants failed to provide him adequate medical treatment in relation to an ACL tear and complication following surgery. More specifically, plaintiff alleges that he was diagnosed with an ACL tear while in the Shasta County Jail, was placed on Norco and Levil for pain, but was told treatment would have to wait until he arrived at the facility he was endorsed to. Upon arrival at into High Desert State Prison, medical staff took him off the Norco and Levil, and ordered ibuprofen which was not sufficient to deal with his pain. Presumably upon transfer to California State Prison Solano (CSP Solano), in January 2011, Dr. Win increased the prescription of ibuprofen, but refused to prescribe Norco. The ibuprofen was insufficient. In March 2011, Dr. Win prescribed naproxen, which was also insufficient. Plaintiff then fell off his top bunk, and x-rays were ordered. Dr. Waters read the x-rays and determined it was negative for damage. However, an MRI done in May 2011 showed a tear. Plaintiff continued to request pain medication, but the medical staff thought Plaintiff was faking the pain.

Plaintiff had surgery on his knee in October 2011. He was then transported back to prison right after and was in significant pain when he arrived. The surgeon had ordered pain medication and a pillow to elevate his knee, but he never received. Upon arrival back at prison, Plaintiff was given morphine sulphate; the nurse refused to given him more oxycotin as the surgeon had. Plaintiff then went "man down" due to pain, and he was given a shot of Toradol. The nurse was rude, and falsely accused him of "cheeking" narcotics. However, plaintiff was not on any narcotics on October 1, 2011. Based on that false accusation, on October 16, 2011,

Plaintiff's prescription for morphine sulphate was canceled. On October 20, 2011, Dr. Ramos put him back on morphine sulphate for three more days. However, Dr. Shadday took him off the morphine and put him on tramadol. Dr. Shadday threatened to write Plaintiff up if he requested any more pain medication. Medical staff had become bias against Plaintiff. Plaintiff continued to complain about his pain, not receiving a knee pillow, and that his knee did not feel right.

On November 11, 2011, RN Smith refused Plaintiff's request to be seen by a doctor. Dr. Win increased his tramadol amount after Plaintiff filed a 602 inmate grievance. Defendant McAlpine denied the 602. On November 17, 2011, Dr. Lee interviewed Plaintiff regarding the 602, which was denied.

In April 2012, Plaintiff was in administrative segregation, and Dr. Tan was assigned as his primary care doctor. On April 30, 2012, he noticed a loose body in his knee and showed RN Lahey. This became more painful. On May 25, 2012, he requested better shoes from Dr. Tan, who refused to give plaintiff a soft shoes chrono as it would not be honored in administrative segregation. Dr. Tan ordered Plaintiff shoe insoles instead, which were received in August but were not the right ones so plaintiff refused them.

On August 1, 2012, plaintiff had additional x-rays on his knee, which showed no damage. On August 4, 2012, plaintiff went "man down" again due to pain. He saw the same rude nurse, and was given a shot of Toradol. On August 6, 2012, Plaintiff saw Dr. Tan for pain and swelling in his knee. Plaintiff requested a follow up with the surgeon. However, plaintiff did see the surgeon on August 24, 2012, and the surgeon ordered an MRI. Dr. Tan refused the MRI on August 27, 2012. From August until November 2012, plaintiff was seen several times for pain. On November 6, 2012, Plaintiff finally had an MRI done which showed a loose body in his knee. This was removed on January 23, 2013.

## II. DISCUSSION

Plaintiff's complaint suffers from several defects.

A. Failure to Link

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

There are several individuals plaintiff has identified as defendants, but he fails to allege any facts showing these individuals were involved in any manner in the denial of medical care, including Hsieh, Kotarek, Collins, Dingcong, Andres, Lafagan, Hardman, Fontillas, Herhst, Acosta, and Espine. These individuals are not mentioned at all in the body of the complaint. While this defect is subject to cure, plaintiff is advised to be mindful of what is required to state a claim for a violation of the Eighth Amendment as set forth below. Only those individuals directly involved with his claims of the denial of necessary medical care may be held liable.

B. Supervisory Defendant

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government

officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Here, Plaintiff names Warden Swarthout as a defendant in this action. However, the only allegations against Warden Swarthout is that he is legally responsible for the operation of the prison and the welfare of the inmates. There are no facts alleged that he was personally involved in any of the violations alleged. Thus, it appears appropriate to dismiss Warden Swarthout as a defendant to this action.

C.  Inmate Grievance

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

In this case, plaintiff alleges Drs. McAlpine and Lee denied a 602 inmate grievance. However, the only allegations related to these two defendants are in relation to their actions adjudicating the inmate grievance. There is no indication in the complaint that either of these doctors were personally involved in any of plaintiff's medical treatment. As such, it does not appear that plaintiff can state a claim against either physician.

D. Medical Treatment

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious

such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give

rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

As set forth above, Plaintiff alleges defendants Win, Tan, Waters, Ramos, Smith, and Shadday were each involved in some manner of his medical treatment. However, plaintiff specifically alleges the medical personnel committed malpractice and were negligent in their dealings with plaintiff. To that extent, such allegations are insufficient to state a claim under § 1983. In order to state a claim for violation of the Eighth Amendment, plaintiff has to allege the defendants were deliberately in different to his medical needs. Negligence and malpractice are not enough. From the facts alleged in the complaint in general, it appears that plaintiff was unsatisfied with the medical treatment he received relating to his knee. However, it is a stretch to see anything more than negligence or malpractice in the actions alleged.

More specifically, plaintiff contends Dr. Waters erroneously read x-rays as negative for damage, when a later MRI showed a tear in his ACL. However, plaintiff fails to allege Dr. Waters was deliberately indifferent to plaintiff's medical needs. At best, plaintiff's allegations could constitute negligence or malpractice, but there is nothing in the complaint to indicate Dr. Waters deliberately misread the x-rays in order to violate plaintiff's Eighth Amendment rights.

Similarly, plaintiff's allegations against Dr. Win indicate that he disagreed with the treatment Dr. Win provided, not that Dr. Win refused to provide treatment to plaintiff. The allegations indicate that plaintiff wanted additional pain medication that Dr. Win refused to prescribe. However, there are no allegations that Dr. Win refused to provide plaintiff with any pain medication. In fact, it is clear from the allegations in the complaint that as plaintiff continued to complain about pain and inadequate pain treatment, Dr. Win increased the pain medication prescribed and tried alternative medications. Again, the allegations against Dr. Win

could only amount to perhaps negligence or malpractice, not an Eighth Amendment violation.

As to Drs. Ramos and Shadday, plaintiff's only allegations against these two doctors relate to the medications they prescribed. Plaintiff alleged that Dr. Ramos prescribed morphine sulphate for three days after his prior prescription was canceled by an unnamed person based on allegedly false accusations. It is unclear how Dr. Ramos giving plaintiff the medication he was requesting, albeit for a short time, could rise to an Eighth Amendment violation for deliberate indifference. It appears that Dr. Ramos was not plaintiff's primary care provider. Thus, only allowing a prescription for three days would not be a denial of treatment. Similarly, plaintiff alleges Dr. Shadday took him off morphine sulphate, but started him on an alternative pain medication of tramadol. Again, at best this would constitute a difference in opinion, and would not rise to a violation of the Eighth Amendment.

Next, plaintiff's allegations against defendant Smith are unclear. He alleges defendant Smith refused to allow plaintiff to be seen on November 11, 2011, referring to an exhibit that is not attached to the complaint. Plaintiff fails to provide sufficient information as to defendant Smith's refusal. Throughout the complaint, plaintiff states he informed numerous doctors and nurses about the pain he was in, and that he filled out and submitted numerous medical treatment requests, including on November 11, 2011. However, he does not specifically state why he needed to be treated on that particular day, and whether he received treatment or not. There are simply not enough facts alleged to determine whether plaintiff can state a claim against defendant Smith for denial of medical treatment. Plaintiff is reminded that in order to state a claim, he has to meet the standards set forth above.

Finally, plaintiff alleges that while he was in administrative segregation, Dr. Tan refused to give plaintiff a soft shoe chrono, and refused to order an MRI. However, he also states in the complaint that Dr. Tan provided plaintiff an alternative to the soft shoe chrono in the form of shoe insoles. The shoe insoles were not what plaintiff wanted, but again this allegation is based on a difference of opinion not denial of treatment. Similarly, plaintiff specifically states

that Dr. Tan's refusal to order the MRI on August 27, 2012, was based on an August 1, 2012 x-ray which showed nothing. That an MRI was done in November 2012, which showed a loose body in his knee, does not necessarily amount to the denial of medical treatment. Again, it appears this is a difference in opinion as to what was medically necessary, not a refusal to provide plaintiff treatment.

E. Motion to Serve

Finally, plaintiff has filed two motions in an attempt to have his complaint served (Docs. 25, 26). However, as discussed above, the undersigned has concluded that plaintiff's complaint fails to state a claim and service is not warranted at this time. If plaintiff files an amended complaint as set forth below, the court will address whether service of any amended complaint is appropriate at that time.

### III. CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection

between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the following choices: (1) plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend;

2. Plaintiff shall file a amended complaint within 30 days of the date of service of this order; and

3. Plaintiff's motion for ruling (Doc. 25) and for service (Doc. 26) are denied.

DATED: July 19, 2018

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

11